PEOPLES NATIONAL BANK AND TRUST COMPANY OF BELLEVILLE, NEW JERSEY, RESPONDENT, v. CHARLES S. GINSBURG ET AL., APPELLANTS.

Submitted May 29, 1931—Decided October 19, 1931.

For the appellants, *George H. Rosenstein* and *Lionel P. Kristeller.*

For the respondent, *Nathan H. Berger.*

PER CURIAM.

This suit was brought by the Peoples National Bank and Trust Company of Belleville against Charles S. Ginsburg and Martin Simon to recover the amount due upon a promissory note for $2,950, made by the defendants to the order of themselves and endorsed by them to the bank. The defendants filed a counter-claim, the details of which will be hereafter specifically stated. The trial resulted in a verdict for the plaintiff for the amount of the note sued upon, with interest, and the defendants have appealed from the judgment entered thereon.

The facts in the case are practically undisputed, and are as follows: Sometime in April, 1928, the bank was the owner of a note for $16,500, made by the two defendants, and held certain shares of the Lincoln Interstate Holding Company as collateral security for the payment thereof. In June, 1929, the note had been reduced by payments made thereon to $10,200. The defendants then had a conference with the vice-president of the bank relating to the note and the collateral, and as a result thereof it was agreed that the note should be split into two other notes, one for $7,200 and the other for $3,000, and that the collateral security held by the bank—that is, the Lincoln corporation's stock—should be specifically pledged as security for the payment of the larger note. This agreement was carried out. The larger note, however, contained a provision that, although the shares of the Lincoln Interstate Company should be held primarily as security for the payment of that note, it also should be held by the bank as collateral security for the payment of any other liability or liabilities of the defendants to it then existing or which might thereafter arise. The note for $3,000 was renewed from time to time and $50 was paid on account of the principal thereof, thereby reducing the original note to $2,950; and the present suit is brought on the last renewal note. Some months after the agreement above recited was entered into there was a merger of the Lincoln Interstate Holding Company with the Niagara Shares Corporation of Maryland, and the stock of the Lincoln concern held

by the bank was exchanged, with its consent, for shares of the Niagara corporation. Later, and in September, 1929, the defendants entered into a contract with a third party, by the terms of which they agreed to sell all of the stock of the Niagara corporation then held by the bank as collateral security for the payment of defendants' notes. The agreed upon purchase price was considerably less than the total amount of the notes held by the bank. They notified the latter of the sale and called on it to turn over the stock to the purchaser upon his paying to it the price agreed upon between him and the defendants. This the bank refused to do, for the reason that, although the purchase price would have paid the larger note in full, it would have left the note which is the subject-matter of the present suit practically unsecured by any collateral, the Niagara company's stock having fallen in price between the time when it was acquired by the defendants and the time when they sought to have the bank sell it. After the refusal of the bank to deliver the stock in compliance with the defendants' demand, there was a still further depreciation in the market value thereof, and the counter-claim of the defendants is based upon the theory that the refusal of the bank to comply with their demand to make the sale was without legal justification, and that, for this reason, they are entitled to recover from the bank the amount of the depreciation in the value of the stock between the time of the bank's refusal to comply with their request and the time of the institution of the present suit.

The ground upon which the present appeal is rested is that the trial court erred in refusing to direct a verdict in favor of the appellants for the amount covered by their counter-claim. The argument in support of this contention is that the pledgee of stock has no right to refuse to sell the same when directed to do so by the pledgor, and that its failure to make the sale within a reasonable time thereafter constitutes negligence on its part, rendering it liable for the moneys lost by the pledgor as a result of the refusal to comply with his demand. In our opinion, this contention is without legal justification. Normally the pledgee of stock

is entitled to hold it as security for the payment of the debt so long as that debt remains unsatisfied, and, in order to entitle the pledgor to require a sale thereof by the pledgee, where the price produced by such sale would not satisfy the debt for which the stock was pledged, the pledgor, as a condition precedent, must pay to the pledgee such an amount of money as will, together with the price for which the stock is to be sold, satisfy the debt which the pledge was given to secure. It is admitted that no offer to do this was made by the defendants; and further, that they had not sufficient funds to make up the deficiency between the amount of the debt and the amount for which they had contracted to sell the stock.

For the reason stated, we conclude that the judgment under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.